UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| DANNETTE L. WRIGHT )<br>      Plaintiff )<br>       )<br>v. )<br>       )<br>MICHAEL J. ASTRUE )<br>Commissioner of Social Security )<br>      Defendant ) | NO. 1:09-CV-309<br>COLLIER/CARTER |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of the plaintiff's Motion for Judgment on the Record (Doc. 10) and defendant's Motion for Summary Judgment (Doc. 14).

This action was instituted pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(i) and 423.

For reasons that follow, I RECOMMEND the decision of the Commissioner be AFFIRMED.

### Plaintiff's Age, Education, and Past Work Experience

Plaintiff was 36-years-old at the time of her administrative hearing (Tr. 22). By that time, she had earned a GED and worked as a sewing machine operator, cashier, and packer (Tr. 95, 108, 120).

1

Claim for Benefits

Plaintiff filed her claim in May 2007, alleging she became disabled on January 5, 2006, due to degenerative disc disease and nerve damage in her right leg (Tr. 71, 78, 139). Her claim was denied both initially (Tr. 36) and upon reconsideration (Tr. 37). An ALJ held an administrative hearing on September 11, 2008 (Tr. 20-34). On March 20, 2009, the ALJ issued the Commissioner's final administrative decision denying benefits (Tr. 10-19). The ALJ conducted a five-step process in determining whether Plaintiff was entitled to benefits, as described in 20 C.F.R. § 404.1520. The ALJ first determined Plaintiff had not engaged in substantial gainful activity since the date she allegedly became disabled (step one) (Tr. 12). The ALJ next found Plaintiff had severe impairments, but none of those impairments met or equaled the listed impairments of 20 C.F.R. Pt. 404, App. 1 (steps two and three) (Tr. 12-16).

The ALJ then determined Plaintiff had the residual functional capacity ("RFC") to perform light work (Tr. 16). Consistent with the RFC, the ALJ concluded Plaintiff could perform her past work as a sewing machine operator (Tr. 18) (step four). As Plaintiff was able to perform her past relevant work, the ALJ did not reach the question of whether Plaintiff could perform jobs that existed in significant numbers in the national economy (step five). *See* 20 C.F.R. § 404.1520. But had the ALJ proceeded to that question, the medical-vocational guidelines would have directed a finding of no disability. *See* 20 C.F.R., Part 404, Subpart P, Appx. 2.

The Appeals Council denied Plaintiff's Request for Review (Tr. 1-3). Plaintiff then filed the action that is presently before this Court.

Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; *Skinner v. Secretary of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990).

Once, however, the claimant makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. *Richardson v. Secretary, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner

are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since January 5, 2006, the amended onset date of disability (20 CFR 404.1571 *et seq*).

3. The claimant has the following severe impairments: Degenerative disc disease of the lumbar spine with radiculopathy (20 CFR 404.1521 *et seq*).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of light work at a semi-skilled to skilled level as defined in 20 CFR 404.1567(b).

6. The claimant is capable of performing past relevant work as a sewing machine operator (DOT 787.682-066, light and semi-skilled). This work does not require

the performance of work-related activities precluded by the claimant's residual
functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security
Act, from January 5, 2006, through the date of this decision (20 CFR
404.1520(f)).

(Tr. 12-18).

## Issues Raised

1. THE COMMISSIONER ERRED IN FINDING PLAINTIFF'S OBESITY WAS NOT SEVERE AND IN FAILING TO CONSIDER THE IMPACT OF HER OBESITY ON HER RESIDUAL FUNCTIONAL CAPACITY.

2. THE COMMISSIONER FAILED TO FOLLOW HIS OWN REGULATIONS REGARDING EVALUATION OF WHETHER OR NOT PLAINTIFF MET OR EQUALED A LISTED IMPAIRMENT.

3. THE RESIDUAL FUNCTIONAL CAPACITY FINDING IS INCONSISTENT WITH THE MEDICAL EVIDENCE RELIED UPON AND IS INCONSISTENT WITH THE REGULATORY DEFINITION OF LIGHT WORK.

4. THE DECISION DOES NOT PROVIDE ADEQUATE RATIONALE FOR THE FINDING THAT PLAINTIFF COULD RETURN TO HER PAST RELEVANT WORK AND THE DETERMINATION IS NOT SUPPORTED BY ADEQUATE EVIDENCE.

5. THE ALJ FAILED TO PROVIDE ADEQUATE RATIONAL FOR FINDING PLAINTIFF'S SUBJECTIVE COMPLAINTS WERE NOT CREDIBLE.

## Relevant Facts

Medical Evidence:

Plaintiff asserts she became disabled on January 5, 2006 due to degenerative disc disease and nerve damage in her right leg (Tr. 78, 139). On that day, Plaintiff saw Dr. Paul G. Smith, Jr. for complaints of pain and numbness in her back and right leg (Tr. 211). Dr. Smith prescribed

anti-inflammatory and pain relief medications (Tr. 211).  He also indicated Plaintiff would likely be able to return to work in two to three weeks (Tr. 208).

Two weeks later, Dr. David A. Beeks diagnosed Plaintiff with disc herniation, but noted Plaintiff was in no acute distress (Tr. 171).  He mentioned a recent MRI of Plaintiff appeared to show Plaintiff had a disc fragment in her spine, although he noted the MRI was "not [of] real good" quality (Tr. 171).

On January 24, 2006, Plaintiff had back surgery to treat disc herniation (Tr. 150-52).  During the surgery, Dr. Beeks noted Plaintiff might have had a conjoined nerve root and a little bit of spina bifida culta (mild spine deformity present at birth) (Tr. 151).  But in the next two months, although Plaintiff had difficulty toe walking, she was able to heel walk and Dr. Beeks noted the surgery had achieved moderately good results (Tr. 164).  On February 8, 2006, Plaintiff reported her pain was "substantially improved" but reported continued difficulty heel and toe walking.  She was set up for physical therapy (Tr. 168).

Also during that time, in March 2006, Plaintiff attempted to return to her job as a packer (Tr. 25).  One month later, Dr. Beeks reiterated Plaintiff's surgery had produced "moderately good results," but noted Plaintiff continued to have nerve pain (Tr. 162).  In May, Plaintiff told Dr. Smith she was "doing pretty good," but she had leg pain since her surgery (Tr. 212).  One month later, in June 2006, Plaintiff again stopped working, allegedly because of her pain (Tr. 25-26).  Imaging showed no evidence of recurrent or residual disc protrusion, although there was some "[v]ery small disc protrusion centrally at L3-4 and L4-5, unchanged" in two places (Tr. 161).

6

In the next two months, Plaintiff was scheduled for three back injections, but only had two (Tr. 177). Because Plaintiff had not been improving as much as he wanted, Dr. Beeks prescribed pain medication (Tr. 158). Plaintiff initially received significant pain reduction, but her complaints increased over time (157, 176).

Plaintiff continued to visit Dr. Smith. While Plaintiff complained about back and leg pain at some of her appointments, at other appointments Dr. Smith did not note that Plaintiff had any issues (pain or otherwise) with her back or legs (Tr. 213[1], 219). Dr. Smith commented after one visit in March 2007, that Plaintiff should avoid working for two days because of upper respiratory symptoms (Tr. 219).

In April 2007, Plaintiff asked Dr. Smith to increase her pain medication (Tr. 220). But that same month, an MRI showed mild diffuse disc bulge at L5-S1 and no recurrent spinal canal narrowing or nerve root impingement and only indicated a post-surgical change in one disc and small protrusions in two other discs (Tr. 223). One week later, Dr. Smith signed a disability statement indicating the probable duration of Plaintiff's condition as six weeks to three months (Tr. 221). Although not reflected in the medical records, Plaintiff claimed at her hearing that Dr. Smith had "put [her] off work permanently" one month prior to that statement (Tr. 27).

By May 2007, Plaintiff was employed again at a bakery, but complained of a pain level of six on a ten-point scale (Tr. 230). However, Orthopedist Scott D. Hodges thought Plaintiff's "pain seem[ed] a little out of proportion" to her actual condition, as he did not see any muscle spasms and straight leg tests (both sitting and supine) were negative. Plaintiff had normal gait, muscle tone, lumbar flexibility, deep tendon reflexes, and motor strength for all muscle groups in

---

[1] Note from November 20, 2006.

the lower extremities (except for some areas on her right side). However, Plaintiff could not toe walk on her right foot or heel walk on either foot. (Tr. 228).

One month later, Pain Specialist Dennis Ford assessed Plaintiff with post-operative pain, low back pain, nerve pain, lumbrosacral radiculitis and morbid obesity (Tr. 263). Dr. Ford noted Plaintiff had normal muscle strength, but limited range of motion in her lumbar spine and a slightly pain-altered gait (Tr. 263).

Nine days after seeing Dr. Ford, Dr. James N. Moore, a state agency reviewing physician, assessed Plaintiff as being able to sit, stand, and walk for six hours in an eight-hour day (Tr. 232). Dr. Moore thought Plaintiff could lift ten pounds frequently and 20 pounds occasionally (Tr. 232-235). He did not recommend additional limitations (Tr. 232-235). In making this assessment, Dr. Moore noted Plaintiff "ha[d] returned to nearly normal function" (Tr. 238). His report detailed his consideration of objective medical findings, including Plaintiff's height, weight, and body-mass index (Tr. 238).

That same month, Plaintiff told Dr. Smith that her leg was "bothering her a little bit," but that she was "doing pretty well" (Tr. 240). Although Plaintiff claimed on a pain questionnaire of the Tennessee Dept. of Human Services that her pain "severely limit[ed] [her] ability to do a lot of basic activities," she admitted she shopped (accompanied by someone), socialized with her family, and "sometimes" was able to vacuum and wash dishes (Tr. 104).

Plaintiff continued to see Dr. Ford for pain treatment, but again saw Dr. Smith in August 2007 for issues related to her blood sugar (Tr. 239). Although Dr. Smith examined Plaintiff on August 28, 2007, he made no reference to any back or leg pain on that occasion (Tr. 239).

On October 13, 2007, State Agency Reviewing Physician Frank R. Pennington reviewed the record and opined Plaintiff was only partially credible, noting "[a]lthough claimant alleges

worsening, medical evidence doesn't support worsening to the extent of a disability" (Tr. 271, 273). He concluded Plaintiff could lift 10 pounds frequently and 20 pounds occasionally and sit, stand, and walk for six hours out of an eight-hour workday (Tr. 267). Dr. Pennington assessed no further limitations on Plaintiff, except for opining she could only occasionally climb (Tr. 268-270). Dr. Pennington provided a detailed review of the medical evidence that he considered in making his assessment, including Plaintiff's obesity (Tr. 273).

In November 2008, Dr. William A. Holland performed a consultative examination of Plaintiff, observing that her "motor sensory, and cerebellar function [was] grossly intact" (Tr. 316). He also noted she was obese (Tr. 316). Dr. Holland assessed Plaintiff as being able to lift and carry 20 pounds frequently, with a 25-pound total limit (Tr. 319). He opined she could sit for a total of eight hours out of an eight-hour day, stand for a total of four hours of an eight-hour day, and walk for a total of four hours of an eight-hour day (Tr. 320). Dr. Holland also wrote that Plaintiff could frequently climb, balance, stoop, kneel, crouch, and crawl (Tr. 322). While Plaintiff had a positive straight leg test on the right while seated, that same test was negative on the left. There was also no indication of a positive straight leg test while Plaintiff was supine (Tr. 316).

<u>Analysis</u>

1. DID THE COMMISSIONER ERR IN FINDING PLAINTIFF'S OBESITY WAS NOT SEVERE AND IN FAILING TO CONSIDER THE IMPACT OF HER OBESITY ON HER RESIDUAL FUNCTIONAL CAPACITY?

Plaintiff argues it was error for the ALJ to find Plaintiff's obesity non-severe and further argues the only reference to plaintiff's obesity is a *pro forma* recitation mentioning SSR 02-1p which implies that the ALJ considered the effects of obesity while in fact, the decision offers

absolutely no assessment of the effects of obesity on plaintiff's ability to function. However, Plaintiff concedes the ALJ acknowledged her diagnosis of morbid obesity and mentioned in his decision that the condition could be controlled with diet and exercise (Doc. 11, Pl. Brief p 4,6). It is therefore clear the ALJ considered Plaintiff's obesity in the decision (Tr. 15). The ALJ notes Dr. Ford recommended an exercise program and weight loss and ultimately found her condition was currently non-severe (Tr. 15, 16).

The Commissioner argues the ALJ gave "considerable weight" or "great weight" to physicians who considered Plaintiff's obesity (Tr. 17-18). The record confirms Drs. Holland and Pennington explicitly noted Plaintiff's obesity and then determined Plaintiff had abilities consistent with light work (Tr. 238, 316). Dr. Moore referenced Plaintiff's body-mass index and reached the same conclusion (Tr. 273). Because the ALJ adopted their opinions in developing the residual functioning capacity, I agree with the Commissioner that his decision is based upon medical sources that considered Plaintiff's obesity.

A claimant does not qualify for disability simply by being obese. Obesity must decrease a claimant's functional capacity to the point that it would preclude work. SSR 02-1p. It is Plaintiff's burden to show that she is disabled. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a). Plaintiff has pointed to no evidence or even any rationale as to why her obesity would limit her function to less than light work in light of the opinions of doctors on which the ALJ relied. Plaintiff has not met her burden of showing that she is disabled by her obesity. There is substantial evidence to support the conclusion of the ALJ on this issue.

2. DID THE COMMISSIONER FAIL TO FOLLOW HIS OWN REGULATIONS
REGARDING EVALUATION OF WHETHER OR NOT PLAINTIFF MET OR EQUALED A
LISTED IMPAIRMENT?

In evaluating the evidence, the ALJ found Plaintiff did not meet any listed impairments (Tr. 16). Plaintiff argues that she qualified under Listing 1.04(A) which requires the following:

> **1.04 *Disorders of the spine*** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

Plaintiff bases much of her argument on her disc herniation (Doc. 11, Pl. Brief 8-9). But disc herniation, even if it was "massive," is only one element of the listings. Listing 1.04 also requires (among other factors) that there be "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." Listing 1.04(A). The medical evidence shows that Plaintiff does not meet these elements.

Plaintiff did not establish that she had motor loss as defined by Listing 1.04(A). Instead, at Plaintiff's most recent medical examination, Dr. Holland wrote that Plaintiff's "motor sensory, and cerebellar function [was] grossly intact" (Tr. 316). The ALJ discussed these findings in detail (Tr. 15). Dr. Holland's assessment of Plaintiff's strength was consistent with Drs. Hughes and Ford, who both noted that Plaintiff had normal strength in her extremities (Tr. 228, 263).

Plaintiff complains that the ALJ should not have taken Dr. Holland's observations into account because Dr. Holland allegedly was not provided with Plaintiff's prior medical records.

*Id*.  As the Commissioner argues, whether Dr. Holland was provided with these records has no bearing on his observation that Plaintiff's motor abilities were intact when he examined her.

Also, there is no evidence of Plaintiff having positive straight leg tests in both the sitting and supine positions.  As defendant points out, there are seven places in the record where physicians administered a straight leg test to Plaintiff (Tr. 171, 230, 250, 263, 275, 310, 316).  Five of those tests, all taken in 2007 and 2008 (one of which was explicitly referenced by the ALJ (Tr. 14)), yielded fully negative results (Tr. 230, 250, 263, 275, 310).  Of the remaining two tests, one was taken in 2006, well before the five completely negative tests (Tr. 171).  There was also no indication as to whether that test was taken in both the sitting and supine positions (Tr. 171).  The second positive test (taken in 2008) was only taken in the sitting position (Tr. 316).  Therefore, Plaintiff cannot meet the requirement for a positive straight leg test in both the sitting and supine positions.

Plaintiff argues the ALJ's findings were improper because he did not go through a formal step-by-step analysis of Listing 1.04(A) (Doc. 11, Pl. Brief at 9).  However, the ALJ did discuss the factors required for Plaintiff to meet Listing 1.04(A), i.e., no significant motor loss in her latest examination and no positive straight leg test in both the sitting and supine position (Tr. 14-15, *citing* 228, 316).  *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (noting that there was "no[] require[ment] [for] the ALJ to use particular language or adhere to a particular format" as the ALJ's decision, read as a whole, contained a sufficient explanation for the step three finding.); *see also Fischer-Ross v. Barnhart*, 431 F.3d 729, 735 (10th Cir. 2005) ("In sum, the ALJ's confirmed findings at steps four and five of his analysis, coupled with indisputable aspects of the medical record, conclusively preclude Claimant's qualification under the listings at step

12

three . . .. Thus, any deficiency in the ALJ's articulation of his reasoning to support his step three determination is harmless.").

Even if there was no step-by-step analysis, I conclude there was sufficient articulation and substantial evidence to support the ALJ's conclusion Plaintiff did not meet any Listing.

3. WAS THE RESIDUAL FUNCTIONAL CAPACITY FINDING INCONSISTENT WITH THE MEDICAL EVIDENCE RELIED UPON AND INCONSISTENT WITH THE REGULATORY DEFINITION OF LIGHT WORK?

I agree with the Commissioner that the opinions of Drs. Holland, Moore, and Pennington, on which the ALJ relied, support the determination that Plaintiff had the residual functional capacity ("RFC") to perform light work[2] (Tr. 16). Dr. Holland, Plaintiff's most recent examining physician, assessed Plaintiff as being able to lift and carry 20 pounds frequently, with a 25-pound total limit (Tr. 319). Dr. Holland opined Plaintiff could sit for a total of eight hours out of an eight-hour day, stand for a total of four hours out of an eight-hour day, and walk for a total of four hours a day (Tr. 320). He also wrote Plaintiff could frequently climb, balance, stoop, kneel, crouch, and crawl (Tr. 322). The ALJ accorded "considerable weight" to Dr. Holland's assessment (Tr. 18).

Plaintiff argues the ALJ's deference to Dr. Holland's opinion actually precludes light work (Doc. 11, Pl. Brief at 10-12). Under SSR 83-10, light work requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10. Dr. Holland opined Plaintiff could stand and walk for a total of eight hours out of an eight-hour day (four

---

[2] *Light work is defined as* "work involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §404.1567(b).

hours standing and four hours walking) (Tr. 320). Dr. Holland's opinion therefore is consistent with light work and supports the ALJ's decision. *See* SSR 83-10.

In addition to Dr. Holland, the ALJ gave "great weight" to state agency reviewing physicians Moore and Pennington (Tr. 18). They each opined Plaintiff could lift ten pounds frequently and 20 pounds occasionally and sit, stand, and walk for six hours out of an eight-hour day (Tr. 232, 267). These limitations were also consistent with light work. *See* 20 C.F.R. §404.1567(b); SSR 83-10. In forming their opinions, Drs. Moore and Pennington each gave a detailed review and analysis of the medical records (Tr. 238, 273). On the basis of their review, they concluded Plaintiff "ha[d] returned to nearly normal function" and that "[a]lthough [Plaintiff] alleges worsening, medical evidence doesn't support worsening to the extent of a disability" (Tr. 238, 273). The ALJ also relied, in part, upon this medical opinion when he assessed Plaintiff's residual functional capacity. *See* 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) ("State Agency medical and psychological consultants are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.") I conclude the opinion of those physicians provides substantial evidence to support the ALJ's conclusion Plaintiff could perform light work.

4. DID THE DECISION PROVIDE ADEQUATE RATIONALE FOR THE FINDING PLAINTIFF COULD RETURN TO HER PAST RELEVANT WORK AND WAS THE DETERMINATION SUPPORTED BY ADEQUATE EVIDENCE?

Because the ALJ found Plaintiff capable of performing light work, he concluded she was able to return to her past job as a sewing machine operator in a manufacturing company (Tr. 18). The ALJ was supported in his decision by two state agency vocational experts, who listed sewing

machine operator as one of the jobs that made up Plaintiff's past relevant work experience (Tr. 108, 120). They further classified sewing machine operator as a light work job (Tr. 108, 120). Besides sewing machine operator, the vocational experts also listed hand packager as a medium-level work job under Plaintiff's past relevant work (Tr. 108, 120). They noted that both sewing machine operator and hand packager were equivalent to entries in the Dictionary of Occupational Titles (Tr. 108, 120, citing "DOT Code").

Despite the vocational experts classifying Plaintiff's past relevant work into two separate jobs, Plaintiff argues that her past relevant work was a "composite job" that combined the light work demands of sewing machine operator with the medium-level demands of hand packager (Doc. 11, Pl. Brief at 14-15). Plaintiff argues the ALJ erred by not seeking vocational expert testimony to determine whether Plaintiff could perform this "composite job" with her light work restriction (Doc. 11, Pl. Brief at 15-16). However, I agree with the Commissioner on this issue. The ALJ did not need vocational expert testimony at the hearing because the two state agency vocational experts had already evaluated Plaintiff's past work (Tr. 108, 120). They thought that Plaintiff's past work could be divided into two distinct jobs, one of which was sewing machine operator (Tr. 108, 120). I conclude the ALJ did not require live testimony when the record contained sufficient vocational evidence of the exceptional demands of Plaintiff's past work.

Even if Plaintiff was unable to return to a previous job as the Commissioner argues, the regulations would still guide the ALJ to the conclusion that she was not disabled. If a claimant is unable to return to her past relevant work, the ALJ can look to the Medical-Vocational Guidelines (the "Grids") of 20 C.F.R., Part 404, Subpart P, Appx. 2, to determine whether she

can perform jobs that exist in sufficient numbers in the national economy. Because the ALJ found Plaintiff could perform the full range of light work and was thirty-six at the time of her hearing, she would not be disabled under the Grids. *See* 20 C.F.R., Part 404, Subpart P, Appx. 2. Therefore, even if the ALJ erred in finding that Plaintiff was able to return to her past work without live testimony, that error would have been harmless. Remand in that situation would be futile.

5. DID THE ALJ PROVIDE ADEQUATE RATIONAL FOR THE FINDING THAT PLAINTIFF'S SUBJECTIVE COMPLAINTS WERE NOT CREDIBLE?

Drs. Holland, Moore, and Pennington all opined Plaintiff had abilities consistent with light work. No other physician noted any limitation in Plaintiff's ability to work. Drs. Moore and Pennington assessed exertional limitations greater than those Plaintiff claimed (Tr. 232, 267). Dr. Pennington also notes Plaintiff claimed worsening symptoms not supported by the medical evidence (Tr. 273). Dr. Hughes commented Plaintiff's pain claims seemed a little out of proportion to her actual condition (Tr. 228). As the Commissioner notes, the only person to opine Plaintiff was permanently unable to work because of pain was Plaintiff herself.

Based upon these medical opinions, the ALJ found that Plaintiff was not credible (Tr. 17). The ALJ concluded Plaintiff admitted to activities of daily living that seemed inconsistent with the inability to perform light work, such as washing dishes, vacuuming, shopping, and socializing with her family (Tr. 17, *citing* 104). I find the ALJ's assessment on her activities of daily living to be somewhat unfairly slanted because Plaintiff stated she was only sometimes able to wash dishes and vacuum, and when she goes shopping she is not alone. She socialized very little except with her family (Tr. 104).

Nevertheless, there is other evidence to support the ALJ's credibility findings. The ALJ also mentioned that Plaintiff twice returned to work during the period of her disability (Tr. 17).

16

An additional consideration pointed to by the Commissioner (although not mentioned by the ALJ) were three occasions where Dr. Smith examined Plaintiff but did not note any issues with her back or legs (Tr. 213[3], 219, 239). In one of those occasions, Dr. Smith opined Plaintiff could go back to work in two days (when her upper respiratory issues would have presumably been resolved) without noting that Plaintiff was precluded from working because of back or leg issues (Tr. 219). Further, despite Plaintiff testifying at the hearing that Dr. Smith said that she was permanently disabled (Tr. 27), neither Dr. Smith nor any other physician ever opined that Plaintiff would be unable to work for a period longer than three months.

Although Plaintiff acknowledges that she engaged in many of the activities of daily living referenced by the ALJ, she argues that she was not able to perform these activities on a consistent basis (Doc 11, Pl. Brief at 19-20). However the fact she performed these activities to some degree, when taken together with the opinions of Drs. Holland, Moore, Pennington, and Hughes calls her credibility into question. In accordance with SSR 96-7p, these activities were one factor in the ALJ's decision, he also relied on the medical opinions referenced above which showed her able to perform light work.

Plaintiff argues the fact that her two work attempts were unsuccessful supports her contention that she was disabled. *Id.* However, as the Commissioner notes, Plaintiff returned to work as a packer, which has an exertional level of medium (Tr. 95[4], 108, 120). The ALJ found that Plaintiff could return to her past work as a sewing machine operator, which had an exertional level of "light" (Tr. 18, 108, 120). Therefore, Plaintiff's alleged inability to return to medium-

---

[3]

*Note from November 20, 2006.*

[4]

*Plaintiff indicated that she worked as a* "Packer 3" until April 2007, sixteen months after she allegedly became disabled (Tr. 95).

17

level work does not show that she was incapable of performing the light work discussed by the ALJ. On balance, I conclude the ALJ's evaluation of Plaintiff's subjective complaints is supported by substantial evidence.

## Conclusion

For the reasons stated herein, I conclude there is substantial evidence to support the conclusion of the ALJ and I therefore RECOMMEND the Commissioner's decision be AFFIRMED.

I further RECOMMEND defendant's Motion for Summary Judgment (Doc. 14) be GRANTED, and plaintiff's Motion for Judgment on the Record (Doc. 10) be DENIED.[5]

                                                  *s/William B. Mitchell Carter*
                                                  UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).